UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

EMILY EDWARDS,

                        Plaintiff**,**

                -against-                                **COMPLAINT**

                                            **DEMAND FOR JURY TRIAL**

AMAZON.COM SERVICES LLC,

                        Defendant.

------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1. This action arises from Amazon's systemic failure to prevent, investigate, or remediate sexual harassment in the workplace, leading to a hostile work environment, discrimination, and retaliation against Plaintiff Emily Edwards.

2. Plaintiff Edwards was employed as a robotic operator at Amazon's fulfillment center in Hopewell Junction, New York. Throughout her employment, she was subjected to persistent and egregious sexual harassment by multiple male coworkers, including Jamil "Mills" Bristow and Lloydel "Lloyd" Fearon. Defendant were fully aware of the ongoing harassment, yet failed to take any meaningful action to protect Plaintiff or enforce their own anti-harassment policies.

3. Despite reporting the harassment to Amazon's supervisors and Human Resources on multiple occasions, Defendant ignored her complaints and allowed the harassment to continue unchecked. Amazon not only failed to act but actively discouraged Plaintiff from escalating her complaints, reinforcing a culture of impunity that permitted serial harassers to operate freely.

4. After months of enduring harassment, on May 21, 2024, Plaintiff was physically assaulted by Mr. Bristow during work hours. When she finally defended herself, Amazon retaliated by suspending and then terminating her employment, citing contradictory and pretextual reasons. This action was taken despite Amazon's prior failure to address her repeated complaints about Mr. Bristow's misconduct.

5. Plaintiff's termination is a clear example of unlawful retaliation in violation of Title VII of

the Civil Rights Act of 1964 and the New York State Human Rights Law. Amazon's selective enforcement of its policies demonstrates that the company prioritizes protecting harassers over safeguarding female employees.

6. Amazon's failure to properly investigate sexual harassment claims is part of a broader pattern of corporate negligence. Plaintiff is not the only victim—other Amazon employees have suffered similar harassment and retaliation, as evidenced by prior lawsuits and settlements. Defendant have cultivated a work environment where sexual harassment is tolerated and victims are silenced through intimidation, retaliation, and wrongful termination.

7. Through this lawsuit, Plaintiff seeks to hold Amazon and its leadership accountable for their unlawful conduct. Plaintiff seeks compensatory and punitive damages, lost wages, emotional distress damages, and injunctive relief to prevent Amazon from continuing to engage in discriminatory and retaliatory practices.

8. Plaintiff demands a jury trial on all issues so triable.

## JURISDICTION AND VENUE

9. This action arises under federal law, including the Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352) (Title VII).

10. This Court has original jurisdiction under 28 U.S.C. §1331. Federal Question, in relation to Plaintiff´s claims as these claims arise under the laws of the United States.

11. Supplemental jurisdiction is invoked under 28 U.S.C. § 1367 for Plaintiff's claims under the New York Exec. Law §296 et. seq., as these claims form part of the same case or controversy.

12. Venue is proper in the United States District Court of New York pursuant to 28 U.S.C. §1391, as Defendant conduct business in Dutchess County, and a substantial part of the events or omissions giving rise to the claim occurred in Dutchess County, New York.

## THE PARTIES

### PLAINTIFF

13. Plaintiff Emily Edwards hereinafter ("Plaintiff") or ("Plaintiff Edwards") or ("Ms. Edwards") resides at 423 south, Fulton Ave, Apt 3, Mount Vernon NY 10553.

### DEFENDANT

14. Defendant AMAZON.COM SERVICES LLC. hereinafter ("Defendant Amazon") or ("Amazon") is registered in New York as a foreign L.L.C. doing business in the state of New York at 76 Patriot Way, Hopewell Junction, NY 12533.

15. Defendant Amazon, through its service agent listed on the New York Division of Corporations inquiry, is represented by Corporation Service Company, located at 80 State Street, Albany, New York 12207.

2

16. Defendant Amazon performed one or more of the following actions while Plaintiff worked for Defendant Amazon: (1) hire the Plaintiff, (2) terminate the employment of the Plaintiff, (3) set the wage rate of Plaintiff, (4) maintain payroll records concerning the Plaintiff, or (5) institute work rules for the Plaintiff.

### BACKGROUND FACTS

17. The Defendant employed Plaintiff as a W2 non-exempt wage earner.

18. Defendant Amazon owns and operates a warehouse fulfillment center in Hopewell Junction, New York.

19. On information and belief, Defendant's fulfillment center is nearly 600,000 square feet and currently employs more than 1,000 full-time employees at this facility.

20. At all relevant times, Ms. Edwards was an employee of Defendant's fulfillment center warehouse located at 76 Patriot Way, Hopewell Junction, NY 12533.



Figure 1 Location where Plaintiff worked.

21. Defendant employed 15 or more employees during Plaintiff's tenure of employment.

22. Plaintiff was hired on or around December 17, 2023. Plaintiff attained her position at Amazon after applying online for the position.

23. Defendant Amazon paid Ms. Edwards an hourly rate of pay.

24. Ms. Edwards stopped working for the Defendant on or around May 28, 2024.

25. Defendant employed Plaintiff Edwards as a robotic operator.

26. Ms. Edwards was responsible for operating and monitoring robotic systems, performing maintenance and troubleshooting, ensuring adherence to safety protocols, maintaining performance records, and communicating with team members for efficient warehouse operations.

27. Ms. Edwards was qualified to perform the essential functions of her job as she performed her

job duties as a robotic operator without issue during her tenure of employment with Defendant. Plaintiff never received any write-ups, performance improvement plans, or disciplinary actions during her employment.

28. Defendant Amazon has a structured system for recognizing employee efforts, including punctuality and task completion, through its employee recognition programs. These programs are integrated with Amazon's internal tools, allowing managers to easily acknowledge and reward employees for their contributions.

29. Employees can receive recognition in various forms, such as digital pins within the app, which highlight specific achievements like punctuality, teamwork, or creativity. These recognitions not only boost morale but also foster a culture of appreciation and accountability within the workplace.

30. During her tenure, Ms. Edwards received several recognitions for her dedication, positive attitude, and punctuality. Plaintiff was awarded titles such as "Positive Participant," "High Flyer," "Awesome Attendance," and "Extra Shifts".



Figure 2. Photo of the Plaintiff's recognition through the app.

31.  On December 12, 2024, Plaintiff received a Right-to-Sue letter from the U.S. Equal Employment Opportunity Commission (EEOC), confirming his legal right to pursue claims against Defendant. Ex. 1_2024.12.05 _EEOC Right to Sue_

## CORPORATE CULTURE OF HARASSMENT DISCRIMINATION, RETALIATION AND HOSTILE WORK ENVIRONMENT

32.  Amazon is a company that doesn't take sexual harassment in the workplace seriously. It allows sexual predators to continuously prey upon victims in the workplace. The company has repeatedly failed to adhere to sexual harassment complaint protocols, failed to protect vulnerable victims, and instead blames the victims of unlawful workplace harassment.

33.  Plaintiff Edwards is one of many such victims who worked for Amazon.

34.  On July 20, 2021, Crystal Wardell and Karla Portillo, employees at Amazon's Burlington, New Jersey distribution center, were sexually harassed by Terry Christianson. Christianson made explicit and harassing comments towards Wardell, including chasing her through the warehouse with a forklift. Despite reporting these incidents to Michelle Singleton, the Human Resources manager, no adequate protective measures were taken. Portillo was also verbally harassed and received explicit photos from Christianson. Despite repeated complaints, Amazon allowed Christianson to continue working, leaving the plaintiffs in a hostile and unsafe work environment without implementing effective protective measures.[1]

35.  In a similar case, Amazon.com Inc. agreed to pay $300,000 to settle claims that the company retaliated against Netquetta Sheppard, a former warehouse worker who alleged that her supervisor sexually harassed her for years at Amazon's Kansas City, Kansas warehouse. The US District Court for the District of Kansas denied Amazon's motion to dismiss her interference and retaliation claims, highlighting the company's failure to take meaningful action to prevent the harassment. This precedent underscores a pattern of Amazon's inadequate response to sexual harassment complaints within its warehouses.[2]

36.  On 2021, Charlotte Newman, a global business development leader for Amazon Web Services, filed a lawsuit against Amazon alleging years of racial discrimination, sexual harassment, and sexual assault by her supervisor. Despite reporting these incidents, Amazon failed to take meaningful action to prevent or address the harassment. Ms. Newman faced ongoing harassment and assault, including unwanted advances and inappropriate remarks from her supervisor. She reported the incidents but received inadequate responses and continued to face discrimination. Ms. Newman's case highlights a broader pattern of Amazon's insufficient handling of sexual harassment complaints, further exemplifying the

---

[1] Wardell, C., & Portillo, K. (2021, July 20). Complaint and Demand for Trial by Jury, Wardell & Portillo v. Amazon.com Services LLC et al. Superior Court of New Jersey, Law Division, Burlington County. Docket No. BUR-L-001562-21.

[2] Amazon will pay $300K over former worker's sex harassment claims. (2024, July 17). Bloomberg Law. https://news.bloomberglaw.com/litigation/amazon-will-pay-300k-over-former-workers-sex-harassment-claims

hostile work environment experienced by Ms. Edwards.[3]

37. In another case, Rachel Westley, a former Amazon warehouse worker in Ottawa, alleged a pervasive culture of bullying, intimidation, and harassment. Ms. Westley reported being inappropriately touched by a superior and then "victim-shamed" after she came forward with the allegation. Despite reporting the incident to management, Ms. Westley faced retaliation, including being denied a deserved promotion and compensation for a workplace injury, ultimately leading to her resignation. Ms. Westley's case highlights a pattern of inadequate responses by Amazon to complaints of harassment and assault, similar to the experiences of Ms. Edwards.[4]

38. In February 2022, Adrianna, a female Amazon warehouse worker, publicly called out her male colleagues for being "dogs" and detailed her experience with alleged sexual harassment at her workplace through a TikTok video. She described how male employees, some in relationships, would inappropriately stare at female coworkers, which she found disrespectful and sexualizing while she was trying to do her job.[5]

39. Like these other victims, Plaintiff Edwards is now another victim of Amazon's careless and flippant attitude toward preventing sexual harassment in the workplace.

40. At the specific Amazon location where Plaintiff worked, a disturbing pattern of sexual harassment by multiple employees has occurred, which management has consistently ignored and failed to address properly.

**SEXUAL HARRASSMENT FACTS**

41. Defendant Amazon fostered a pervasive culture of harassment within Plaintiff Edwards' work environment. Ms. Edwards and her female coworkers often shared with one another their own experiences of sexual harassment by male colleagues. They shared a common understanding that incidents of sexual harassment often go unresolved, by Amazon's management. And that Defendant's internal investigations frequently failing to result in any meaningful action.

42. Ms. Edwards is a 20-year-old African American female about 5'1" in height.

43. Working for Amazon was one of her first jobs. Ms. Edwards is quiet and tries to keep to herself.

44. The Amazon warehouse was an immense facility. Yet Amazon seemed to understaff supervisor or HR representative sufficient to ensure a safe work environment. Despite

---

[3] Roose, K. (2023, January 17). Why I sued Amazon and then kept working there. *Fast Company*. https://www.fastcompany.com/90827069/why-sued-amazon-kept-working-there

[4] Vandore, E. (2023, June 21). Former Ottawa Amazon warehouse worker alleges culture of bullying, intimidation, and harassment. *Ottawa Citizen*. https://ottawacitizen.com/news/former-ottawa-amazon-warehouse-worker-alleges-culture-of-bullying-intimidation-and-harassment

[5] Trepany, C. (2023, July 14). Female Amazon worker calls out male colleague for inappropriate behavior. *Yahoo Lifestyle*. https://www.yahoo.com/lifestyle/female-amazon-worker-calls-male-174314432.html

hearing multiple complaints from her female coworkers about instances of harassment, Plaintiff Edwards experienced a notable lack of visible oversight by management.



Figure 3. Photo taken inside the Warehouse.

45. For example, Plaintiff Edwards was required to use the unisex locker room, which was isolated and lacked both camera surveillance and the presence of HR or security personnel to monitor the area.

46. Defendant Amazon failed to provide adequate security or supervision in the locker room, despite being aware of repeated harassment complaints in that area.

47. Plaintiff had to change in and out of her work clothes in front of coworkers who were members of the opposite sex.

48. Plaintiff Edwards shared the locker room with coworkers whom other female employees had warned her about, citing incidents of sexual harassment. Despite these coworkers being reported for harassment, Amazon took no preventative measures to ensure employees were safe.



Figure 4. Photo taken inside the unisex locker room.

49. In late January 2024, Plaintiff began facing a hostile work environment characterized by sexually charged comments and actions from several coworkers.

50. Ms. Edwards often took more than 15 minutes to walk from the parking area of the Amazon warehouse to the locker room. Along the way, it was common to encounter groups of male coworkers who would shout sexual comments amidst collective laughter. Plaintiff Edwards does not know the names or even the nicknames of these individuals, as the warehouse is so large that it is nearly impossible to know everyone. Other female coworkers would always tell her not to pay attention, saying, "because here, no one does anything about it"

51. This behavior was continuous and widely known by the rest of the workers, including supervisors and managers.

52. Plaintiff Edwards was not the only woman suffering some type of sexual abuse from several male coworkers from different shifts and departments during the time she worked at the company.

53. By Plaintiff's knowledge, several female coworkers had reported this to their direct supervisors as well as the Human Resources department, and several investigations had been carried out in the warehouse.

54. Plaintiff never welcomed any of these sexually charged comments and suffered them daily during her tenure at Amazon.

55. Plaintiff reported the harassment she was subjected to almost every day at the workplace to her supervisor, Elijah Smith ("Mr. Smith"), and her learning ambassador, Haylee[6]. However, despite her repeated complaints, no actions were taken to address the behavior, and the harassment continued unabated throughout her tenure at Amazon.

56. Because of her coworkers' warnings and lack of oversight, Plaintiff Edwards felt worried about potentially experiencing harassment herself shortly after she started working for Defendant. Despite her concerns, Ms. Edwards continued to perform her duties diligently and maintained her professionalism.

**INCIDENTS WITH PLAINTIFF'S COWORKER JAMIL "MILLS" BRISTOW**

57. On information and belief Jamil "Mills" Bristow (hereinafter "Mr. Bristow") was approximately 35 years old, nearly 6'0" in height.



Figure 5 Photo of alleged sexual aggressor, Mr. Bristow.

58. Mr. Bristow worked on the same shift as Ms. Edwards.

59. Before Plaintiff began working for Defendant, multiple female coworkers filed sexual harassment complaints against Mr. Bristow.

60. Mr. Bristow had a complaint filed against him by Sachelle, a coworker on Ms. Edwards shift.

61. In on around January 2024, Mr. Bristow started to sexually harass Ms. Edwards by making

---

[6] Love Sue. (2020, June 14). Amazon Learning Ambassador | how did I become | Steps | how you get evaluated [Video]. YouTube. https://www.youtube.com/watch?v=JMYsPG0DWEc

sexually charged comments such as "that ass makes me so horny," "want me to rub this [grabbing his penis] on that fat ass."

62. When Plaintiff told Mr. Bristow to stop and threatened to report him to both HR and management, Mr. Bristow laughed in her face. Mr. Bristow said there was nothing Ms. Edwards could do against him. Mr. Bristow engaged in this behavior almost daily.

63. Mr. Bristow's harassment could occur at any time, regardless of whether Plaintiff was working or on a break. He would actively seek her out and immediately begin harassing her, creating a constant environment of fear and distress.

64. Initially, Plaintiff Edwards attempted to ignore Mr. Bristow's inappropriate comments and behavior. Ms. Edwards hoped that her lack of response would dissuade him. However, Mr. Bristow's behavior only escalated, becoming increasingly aggressive. Ms. Edwards found this both confusing and frightening, as they had no personal relationship. Plaintiff did not even know Mr. Bristow's last name, and they had never exchanged phone numbers.

65. In response to Plaintiff Edwards ignoring him, Mr. Bristow became enraged and aggressive.

66. Mr. Bristow started to intentionally hit and touch her breasts, buttocks, and arms. He would also kick her buttocks and legs. This harassment could occur at any moment, and Ms. Edwards' pleas to stop were ignored. At no time did Plaintiff Edwards welcome this harmful and offensive behavior.

67. Plaintiff Edwards tried to avoid Mr. Bristow while maintaining professionalism at work. Nevertheless, Mr. Bristow persistently sought her out, waiting for her in different parts of the warehouse and trying to engage her, despite her clear discomfort. To avoid detection, Mr. Bristow would wait for management to be absent before he engaged in said sexual harassment. Mr. Bristow sexually harassed the Plaintiff in numerous locations throughout the facility, including the warehouse operation zone, where the Plaintiff's workstation was assigned, and the grounds outside of the facilities. These were areas monitored by a closed-circuit camera system.



Figure 6. Photo of Plaintiff's workstation.

68. In or around March 2024, Mr. Bristow obtained the personal phone number of the Plaintiff without her consent. He began calling her outside of work hours. During these calls, he made inappropriate and sexually harassing remarks such as, "Come to my place, I want to fuck you," "Are you home yet? I'm so hard right now," and "Want me to come there? I need that ass now."

69. Ms. Edwards complained multiple times to management about Mr. Bristow's behavior but never received any further information or updates. Plaintiff reported Mr. Bristow to her supervisor Elijah, her manager Heather Chaldu ("Mrs. Chaldu") and her learning ambassador5 Haylee. Learning Ambassadors at Amazon hold positions that resemble managerial roles in terms of authority and responsibility, although they do not carry the official title of manager. Defendant Amazon failed to adequately address these complaints, despite Plaintiff Edwards repeatedly reporting Mr. Bristow's inappropriate behavior. Management did nothing. They allowed Mr. Bristow to remain on the same shift as Ms. Edwards and to continue to access the same locker room at the same times. This lack of intervention permitted the ongoing harassment and created an unsafe environment for Ms. Edwards.

70. Plaintiff repeatedly requested separation from her harassers, but Amazon refused to make any accommodations. Plaintiff was forced to continue working in an unsafe environment.

71. Due to warehouse policies, Defendant Amazon obligated Ms. Edwards to continuously train her aggressor, Mr. Bristow, in the tasks required for a Robotic Operator role. Ms. Edwards

complained to both Mrs. Chaldu and Mr. Smith about being forced to work side by side with her aggressor. Their response was that such training was mandatory for workers of the same tier and shift, leaving them unable to prevent these interactions.

72. The repeated, unwelcome conduct created an abusive work environment that interfered with Plaintiff's ability to perform her job effectively.

73. Mr. Bristow went so far as to mock Ms. Edwards by showing her emails from HR investigators on his phone, indicating that the investigations were closed due to lack of evidence, and stating that he was beyond any control at Amazon. Several coworkers, Blake, Katheleen, Bianca, Maya were aware of Mr. Bristow's behavior and expressed sympathy for Ms. Edwards.

74. In or around May 8, 2024, Ms. Edwards was alone in the warehouse locker room.

75. Ms. Edwards was sitting on the benches in the warehouse locker room, getting ready to go home, when Mr. Bristow approached her with an erect penis and precum visible in his jogger.

76. Mr. Bristow repeatedly grabbed himself and moved closer to Ms. Edwards, making lewd comments such as, "Do you like what you see?" "Look at how you make me feel, it's your fault that I'm like this." and "You're almost asking for a piece of this, right?".

77. Mr. Bristow continued advancing until he was nearly in front of Ms. Edwards, almost putting his penis in her face. At this point Plaintiff was completely petrified by this behavior and couldn't move or say anything to make him stop. When he left the room, Plaintiff couldn't leave the room due to the shock of what happened.

78. Ms. Edwards's coworker Maya, from the same shift, entered the room and found her still sitting on the bench, visibly shaken and traumatized from the sexual harassment that had just occurred. Maya helped her grab her stuff, and Ms. Edwards left Defendant Amazon's warehouse.

79. Ms. Edwards reported this incident to management, but Mrs. Chaldu and Mr. Smith advised her not to escalate it to HR. They pointed out the lack of cameras in the locker room and the absence of witnesses, suggesting the investigation would likely be inconclusive and that Mr. Bristow would probably face no consequences. They also mentioned that, according to internal policies, only an HR investigator could officially handle the investigation, implying they couldn't assist further. Thus, they asked Ms. Edwards not to proceed with the complaint and to let them handle it.

80. Defendant Amazon's internal policies and procedures proved obsolete and ineffective, even under the management of Mrs. Chaldu. Despite her extensive 15-year background in law enforcement67 as a state police officer with the California Highway Patrol, where she earned

---

[7] Mrs. Chaldu previously served as a Court Liaison Officer with the California Highway Patrol from August 2015 to March 2021. During her tenure, she was part of the Field Support Unit, investigating major cases such as homicides, criminal threats, employee misconduct, and various types of fraud. Her duties included criminal investigations,

significant recognition

81. Amazon's supervisor Mrs. Chaldu, failed to investigate Plaintiff's complaint, and no disciplinary action was taken against her harasser.

82. Mrs. Chaldu was unable to prevent or adequately assist Plaintiff Edwards. The rigid internal policies at Amazon hindered her ability to address the harassment and provide the necessary protection for Ms. Edwards.

83. Ms. Edwards followed their instructions and did not file a complaint with HR. Plaintiff received no further communication from management and was not informed of any investigation updates from either Mrs. Chaldu or Mr. Smith.

84. Defendant Amazon failed to protect Plaintiff Edwards by requiring her to continue working alongside her aggressor, Mr. Bristow, on the same shift. Ms. Edwards was compelled to use the same locker room at the same times as Mr. Bristow, creating a hostile and unsafe work environment.

85. Defendant Amazon failed to provide adequate support to Plaintiff Edwards following the incident. No psychological counseling or crisis management assistance was offered to her, leaving her without the necessary support channels.

86. Defendant Amazon was on notice of Mr. Bristow's prior sexual harassment complaints yet failed to take corrective action, allowing him to continue harassing Plaintiff.

**INCIDENTS WITH PLAINTIFF'S CO-WORKER LLOYDEL "LLOYD"  FEARON**

87. Lloydel "Lloyd" Fearon (hereinafter "Mr. Fearon") is a 50-year-old Jamaican man working in the same facility as Plaintiff.

88. Lloyd is approximately six feet in height weighing around 170 pounds.

89. Plaintiff was also subject to sexual harassment from Lloyd.

90. Lloyd frequently approached Ms. Edwards when no management was nearby and made lewd comments such as, "You're glowing today, I bet someone fucked you good last night," "I can't work today thinking about those nipples, I just want to squeeze them," "I don't want you around any other man, you have to have my children," "Look at how you make me feel, it's your fault that I'm like this," and "Meet me in the locker room, I want to show you what a real man can do".

91. Ms. Edwards had been reporting this distressing behavior from Lloyd to both her supervisor, Mr. Smith, and her learning ambassador, Haylee. Again, no actions were taken to address or stop the harassment, which continued unabated throughout her tenure at Amazon.

---

interviewing/interrogating witnesses, victims, and suspects, report writing, database research, writing search warrants, evidence collection, and testifying in court trials and civil depositions. Chaldu, H. (n.d.). *[heatherchaldu]*. LinkedIn. Retrieved August 28, 2024, from https://www.linkedin.com/in/heatherchaldu/

92. On or around May 8, 2024, Ms. Edwards clocked out in the middle of her shift and was observed by her superiors sitting alone in the cafeteria for over an hour.

93. When approached by her manager, Mrs. Chaldu, Ms. Edwards explained that she was mentally exhausted due to being subjected to persistent sexual harassment by Lloyd and other male workers from different areas in the warehouse.

94. As a result of Ms. Edwards' explanation, her manager, Mrs. Chaldu, filed a complaint with HR, requesting the initiation of an investigation to address this matter.

95. On May 10, 2024, HR informed Ms. Edwards via email that Jelicia Reed ("Ms. Reed"), an HR investigator, had been assigned to investigate her case. However, Ms. Edwards did not receive any further updates about her case, nor was she asked to provide additional information by the investigator. EX.2_ 2024.8.20_HR email about investigator assigned_

96. On May 23, 2024, Ms. Reed informed Ms. Edwards that the investigation was dropped, citing a lack of evidence and so did not find any violation of Amazon policy or standards of conduct.

97. During the investigation, no action was taken by Amazon to ensure that this behavior did not continue during Ms. Edwards' shifts.

98. Defendant Amazon's inadequate investigation has failed to provide any relief or protection to the victims of harassment in the warehouse.

99. Ms. Edwards complained about Mr. Bristow and Lloyd multiple times, yet Amazon's HR department repeatedly ignored, dismissed, or failed to act on her reports. This pattern of inaction demonstrates that Amazon did not view sexual harassment against female employees as a workplace violation serious enough to warrant immediate intervention.

100. Amazon systematically ignored multiple complaints of sexual harassment made by women in the warehouse, including those made by Ms. Edwards and her female coworkers, establishing a pattern of gender-based negligence.

## SEXUAL HARASSMENT INMEDIATELY BEFORE TERMINATION

101. On May 21, 2024, between 6:45PM and 8:45PM, for two hours, Mr. Bristow continued his harassment of Ms. Edwards during their shift. As he always did, he waited for management to be far away. Mr. Bristow then proceeded to physically and sexually assault her. First he hit her with a glove, then tried to rest a bottle on top of her rear end, and began gropping her breast. Ms. Edwards in shock hit him to stop the attack.

102. Supervisor Mr. Smith intervened and took Ms. Edwards to wellness because she had hurt her fingers and nails. Mr. Smith expressed his frustration with Mr. Bristow's behavior and apologized to her for not being able to do anything against Mr. Bristow. HR got involved and made a written report, taking statements from Ms. Edwards, Mr. Bristow, and Supervisor Mr. Smith. HR informed Ms. Edwards that they would investigate the matter.

103. Ms. Edwards reminded HR that Mr. Bristow had been harassing her for months and that she had reported him multiple times to both HR and management. Plaintiff requested that they review the security footage and reiterated her past complaints.

104. Plaintiff's self-defense was only necessary because Amazon failed to protect her from ongoing harassment. If Amazon had enforced its policies earlier, the May 21, 2024 incident never would have occurred.

105. Defendant Amazon suspended Plaintiff Edwards at around 11:00 PM during the ongoing investigation without providing any clarity on when she could return.

106. Plaintiff Edwards was sent away from Defendant Amazon's facilities without being offered any post-traumatic or psychological support and was provided only with an arranged Lyft ride to take her home.

107. Ms. Edwards was not allowed to be on the premises while the investigation was pending.

108. On May 22 at 10:27 PM, despite being suspended, Mr. Bristow's harassment continued. He called the Plaintiff and said, "I can't wait to see that sweet ass again. You know they won't do anything against me, right?" EX.3_2024.8.20_Mr. Bristowl´s call to Plaintiff_

109. On May 26 when Plaintiff went to the warehouse to inquire about the status of her case, HR representative Ola saw her and asked her to leave as the investigation was still ongoing.

110. On May 28, at 10:57 PM, Defendant retaliated against Plaintiff by firing her. Ms. Edwards received a call from HR representatives Amari and Ola, informing her that her employment was being terminated effective immediately. EX.4_2024.8.20_HR call to Plaintiff_

111. Amazon routinely enforced its disciplinary policies selectively—harassment complaints were dismissed without meaningful investigation, but Plaintiff was fired the moment she physically reacted to Mr. Bristow's continued abuse.

112. Amazon's "zero-tolerance" policy was not enforced against male employees who engaged in workplace misconduct, proving its selective application against Plaintiff.

113. The Defendant's Amazon argument regarding the negative UPT balance included the days Ms. Edwards was suspended in their calculation. Plaintiff never received any write-ups, performance improvement plans, or disciplinary actions during his employment.

114. HR representatives did not show Ms. Edwards any documents or detailed reports of the investigation. Her consistent complaints and the previous investigations into Mr. Bristow's harassment of another coworker were not considered.

115. On May 31, Plaintiff Edwards received a letter from Defendant Amazon's HR department, which, rather than addressing the harassment and hostile work environment she faced during her tenure. The letter, focused solely on reminding her of the confidentiality agreement Ms. Edwards had signed. The letter made it clear that Amazon's primary concern was not the issues she endured, but rather ensuring she adhered to the terms of the confidentiality

agreement. EX.5_2024.8.20_Termination letter_

116. Plaintiff engaged in protected activity by repeatedly reporting sexual harassment to Amazon's HR and supervisors. Shortly after, Defendant suspended her employment in direct retaliation for her complaints.

117. Plaintiff was not the only Amazon employee who suffered retaliation after reporting sexual harassment. Amazon has faced previous lawsuits and EEOC complaints from female employees who were subjected to retaliation after reporting workplace harassment.

118. Amazon's history of allowing male employees to harass female workers without consequence, while punishing women who report harassment, demonstrates a corporate culture that fosters and enables retaliation.

119. Given Amazon's failure to act on previous harassment complaints, it is more likely than not that Plaintiff's termination was a retaliatory measure to silence her rather than a legitimate application of company policy.

120. The timing of Ms. Edwards' termination is suspect—it occurred just days after she made one of her final complaints, demonstrating a clear causal connection between her reports of harassment and her termination.

## INADEQUATE RESPONSE AND FAILURE TO PROTECT

121. Plaintiff was placed in an unsafe work environment where harassment was common knowledge among employees, supervisors, and HR personnel. This proves that the environment was objectively hostile.

122. On May 8, 2024, Plaintiff was found sitting alone in the cafeteria for over an hour, mentally and emotionally exhausted due to ongoing harassment. Her manager, Mrs. Chaldu, personally witnessed this and reported it to HR, yet Amazon still failed to act.

123. The harassment suffered by Plaintiff Edwards was both severe and pervasive, occurring daily over the course of several months, involving explicit sexual comments, unwanted physical touching, stalking, and repeated exposure to inappropriate conduct.

124. Plaintiff reported on multiple occasions the harassment she was subjected to almost every day at the workplace management. However, despite her repeated complaints, no actions were taken to address the behavior, and the harassment continued unabated throughout her tenure at Amazon.

125. Supervisors and HR personnel openly discouraged Ms. Edwards from reporting harassment, stating that investigations would "lead nowhere" because of a lack of cameras or evidence—yet when she defended herself, Amazon acted immediately, proving its enforcement of workplace policies disproportionately punished female victims.

126. Plaintiff was actively discouraged from escalating her complaints to HR, with management explicitly telling her that nothing would come of it due to a lack of cameras or witnesses.

127. Amazon failed to document all of Plaintiff's complaints, leading to missing records that it now falsely claims do not exist.

128. These incidents were not isolated—they occurred almost daily, despite Plaintiff's complaints to HR and management. Amazon placed all the burden on the victim to track and report the specific dates she suffered harassment. Even when she reported incidents to management and HR, who took no action, Defendant still expect her to have handled everything on her own.

129. Defendant lacked an effective anti-harassment policy and did not maintain current, effective measures. Their anti-harassment policy existed only in name, without proper implementation.

130. Amazon's selective enforcement of its Code of Conduct disproportionately harmed Ms. Edwards, while male employees like Mr. Bristow were protected from discipline for months. This unequal treatment creates a strong inference of discrimination.

131. Defendant did not maintain effective formal and informal complaint mechanisms for victims of harassment, leaving employees without reliable avenues for reporting issues.

132. HR investigators closed sexual harassment complaints without conducting proper investigations, even when multiple employees had reported the same harassers. In contrast, Amazon swiftly terminated Ms. Edwards without giving her due process, evidencing gender-based bias.

133. Amazon's failure to act on known harassment complaints before May 21, 2024, emboldened male harassers to believe there would be no consequences, reinforcing the gender-based hostile work environment that led directly to Ms. Edwards' termination.

134. Plaintiff's complaints were documented by multiple Amazon employees, including HR representatives and supervisors. This means Amazon, as an entity, was fully aware of her harassment allegations.

135. Amazon never took remedial action to protect Ms. Edwards despite multiple reports, instead forcing her to continue working alongside her harasser, sharing the same locker room and workspace.

136. If Amazon had properly enforced its anti-harassment policies, Mr. Bristow's conduct would have resulted in his termination long before the May 21, 2024 incident, and Plaintiff would not have been placed in a position where she had to defend herself.

137. Defendant failed to properly train supervisors and employees on harassment and retaliation, resulting in a lack of awareness and responsiveness.

138. Defendant did not implement appropriate monitoring mechanisms to ensure the effectiveness of their policies and complaint structures. The lack of commitment from top management to tolerate no harassment has led to deliberate ignorance of complaints and retaliation against those who raised concerns. Defendant failed to conduct timely and thorough investigations

of harassment complaints or provide a remedial plan effectively designed to stop the harassment.

## DEFENDANT' FALSE AND MISLEADING STATEMENTS TO THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC)

139. On November 21, 2024, Defendant submitted their position statement to the EEOC in response to Charge No. 520-2024-07766. (Ex. 6 – 2024.11.21 Defendant' Position Statement.)

140. Amazon ignored Ms. Edwards' repeated reports of sexual harassment, failing to investigate or take corrective action against known harassers. However, when Ms. Edwards defended herself during an altercation with Mr. Bristow—one of her alleged harassers—Amazon acted immediately to terminate her employment.

141. Amazon's selective enforcement of its policies further exposes its retaliatory motive. Despite Ms. Edwards' complaints, Mr. Bristow and Loid, was allowed to continue working near her with no disciplinary action. He was only terminated after the altercation, suggesting Amazon was more concerned with covering up its failure to address workplace harassment than enforcing its policies fairly.

142. Additionally, Ms. Edwards had never received any prior disciplinary action, performance improvement plans, or warnings related to attendance, further undermining Amazon's claim that this was the true reason for her dismissal.

143. The only reasonable conclusion from Defendant' inconsistent explanations is that Ms. Edwards' termination was retaliatory, triggered by her persistent efforts to report sexual harassment. Amazon failed to uphold its anti-harassment policies, disregarded her complaints, allowed a hostile work environment to persist, and then swiftly terminated her under misleading pretenses.

## FIRST CAUSE OF ACTION
(Discrimination-sex)
(Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352)

144. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

145. The Civil Rights Act of 1964 ("Title VII"), entitles Plaintiff to remain free from discrimination on the basis of sex.

146. Management and coworkers subjected the Plaintiff to egregious sexually motivated comments.

147. Plaintiff notified Defendant numerous times about the sexually explicit behaviors coworkers had towards her daily.

148. Defendant took an adverse employment action against Plaintiff. Defendant failed to properly address Plaintiff's concerns. Defendant's neglect and failure to stop and prevent this behavior to continue happening.

149. Accordingly, the law entitles Plaintiff to all lost wages, front pay, emotional distress, punitive damages, pre and post judgment interest, attorney fees and any and all remedies this Court deems just and proper.

## SECOND CAUSE OF ACTION
(Hostile work environment-Sexual harassment)
(Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352)

150. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

151. The Civil Rights Act of 1964 ("Title VII") prohibits workplace sexual harassment and requires employers to take corrective action to prevent such harassment. It also prohibits unlawful retaliation when an employee engages in protected activity.

152. Title VII applied to the Defendant while Plaintiff was working at Amazon.

153. Title VII protected the Plaintiff while she worked for Defendant.

154. The Defendant subjected Plaintiff to a hostile work environment by allowing her to be harassed by multiple coworkers from her shift and different areas of the warehouse at the beginning, during, and end of shifts without taking preventive or corrective actions.

155. The Defendant subjected Plaintiff to a hostile work environment by requiring her to remain on the same shift as her harassers, forcing her to work and interact directly with them, and to use the same break areas throughout her tenure at Amazon.

156. The Defendant subjected Plaintiff to a hostile work environment by obligating her to use the same locker room as her harassers, a space that was uncontrolled, unsupervised, and without surveillance cameras or the presence of HR personnel to prevent or address incidents of harassment.

157. The Defendant subjected Plaintiff to a hostile work environment when she reported the sexual harassment situations to management, including Messrs. Chaldu, Smith, and Jordan, who failed to acknowledge or address Ms. Edwards' concerns.

158. The Defendant subjected Plaintiff to a hostile work environment when she reported the sexual harassment situations to HR representatives, including Haylee and Ms. Reed, who failed to acknowledge or address Ms. Edwards' concerns and did not conduct proper investigations to stop this kind of behavior in the warehouse.

159. Accordingly, the law entitles the Plaintiff to all lost wages, front pay, emotional distress, punitive damages, pre and post judgment interest, attorney fees and any and all remedies

this Court deems just and proper.

## THIRD CAUSE OF ACTION
(Retaliation)
(Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352)

160. Plaintiff repeats, re-alleges and incorporates every allegation as though fully set forth herein.

161. As set forth herein, the Defendant took an adverse employment action against Plaintiff after she engaged in a protected activity when she complained about the harassment situations endured by members of your organization.

162. Under the Civil Rights Act of 1964 ("Title VII"), Plaintiff was entitled to remain free from retaliatory adverse employment practices after complaining about sexual harassment practices occurred to her.

163. Instead of addressing Ms. Edwards concerns, Defendant terminated Ms. Edwards employment.

164. Accordingly, the law entitles Plaintiff to all lost wages, front pay, emotional distress, punitive damages, pre and post judgment interest, attorney fees and any and all remedies this Court deems just and proper.

## FOURTH CAUSE OF ACTION
(Discrimination-sex)
(New York Exec. Law §296 et. Seq)

165. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

166. The New York State Human Rights Law ("NYSHRL") entitles Plaintiff to remain free from discrimination on the basis of sex.

167. Management and coworkers subjected the Plaintiff to egregious sexually motivated comments.

168. Plaintiff notified Defendant numerous times about the sexually explicit behaviors coworkers had towards her daily.

169. The Defendant took an adverse employment action against Plaintiff. Defendant failed to properly address Plaintiff's concerns. Defendant's neglect and failure to mitigate was the sole reason for Plaintiff's resignation.

170. Accordingly, the law entitles Plaintiff to all lost wages, front pay, emotional distress, punitive damages, pre and post judgment interest, attorney fees and any and all remedies this Court deems just and proper.

## FIFTH CAUSE OF ACTION
(Hostile work environment-Sexual harassment)
(New York Exec. Law §296 et. Seq)

171. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

172. The New York State Human Rights Law ("NYSHRL") entitles Plaintiff to remain free from a sexual harassment hostile work environment.

173. The Defendant subjected Plaintiff to a hostile work environment by allowing her to be harassed by multiple coworkers from her shift and different areas of the warehouse at the beginning, during, and end of shifts without taking preventive or corrective actions.

174. The Defendant subjected Plaintiff to a hostile work environment by requiring her to remain on the same shift as her harassers, forcing her to work and interact directly with them, and to use the same break areas throughout her tenure at Amazon.

175. The Defendant subjected Plaintiff to a hostile work environment by obligating her to use the same locker room as her harassers, a space that was uncontrolled, unsupervised, and without surveillance cameras or the presence of HR personnel to prevent or address incidents of harassment.

176. The Defendant subjected Plaintiff to a hostile work environment when she reported the sexual harassment situations to management, including Messrs. Chaldu, Smith, and Jordan, who failed to acknowledge or address Ms. Edwards' concerns.

177. The Defendant subjected Plaintiff to a hostile work environment when she reported the sexual harassment situations to HR representatives, including Haylee and Ms. Reed, who failed to acknowledge or address Ms. Edwards' concerns and did not conduct proper investigations to stop this kind of behavior in the warehouse.

178. Accordingly, the law entitles Plaintiff to all lost wages, front pay, emotional distress, punitive damages, pre and post judgment interest, attorney fees and any and all remedies this Court deems just and proper.

## SIXTH CAUSE OF ACTION
(Retaliation)
(New York Exec. Law §296 et. Seq)

179. Plaintiff repeats, re-alleges and incorporates every allegation as though fully set forth herein.

180. As set forth herein, the Defendant took an adverse employment action against Plaintiff after she engaged in a protected activity. Ms. Edwards engaged in protected activity when she complained about the harassment situations endured by members of Defendant.

181. The NYSHRL entitles Plaintiff to remain free from retaliatory adverse employment

practices after complaining about sexual harassment practices occurred to her. Instead of addressing Ms. Edwards concerns, Defendant terminated Ms. Edwards employment.

182. Accordingly, the law entitles Plaintiff to all lost wages, front pay, emotional distress, punitive damages, pre and post judgment interest, attorney fees and any and all remedies this Court deems just and proper.

### SEVENTH CAUSE OF ACTION
(Assault & Battery)
(New York Common Law)

183. Plaintiff repeats, re-alleges, and incorporates every allegation as though fully set forth herein.

184. Under New York common law, individuals have the right to be free from threats of physical harm (assault) and non-consensual physical contact (battery). Employers have a duty to protect employees from known dangers in the workplace.

185. Mr. Bristow committed assault by intentionally placing Plaintiff in imminent fear of harmful and offensive physical contact, including but not limited to:

a. a. Cornering Plaintiff in enclosed spaces, such as the warehouse locker room, where she had limited ability to leave.
b. b. Blocking Plaintiff's movements while making repeated, unwanted sexual advances.
c. c. Making sexually harassing remarks while physically intimidating Plaintiff, causing her to fear escalation.

186. Mr. Bristow committed battery by engaging in non-consensual, harmful physical contact with Plaintiff, including but not limited to:

a. Grabbing and touching Plaintiff without consent, including her breasts, buttocks, and arms.
b. Physically pressing against Plaintiff in a sexual manner despite her protests.

187. Plaintiff did not consent to any of the above physical contact, and Bristow's conduct was intentional, harmful, and designed to intimidate and violate Plaintiff's bodily integrity.

188. Defendant Amazon knew or should have known that Mr. Bristow had a history of sexually harassing female employees yet failed to take appropriate corrective action.

189. Plaintiff and other employees made multiple complaints to Amazon's supervisors and HR about Mr. Bristow's inappropriate conduct. Despite this, Amazon allowed him to continue working near Plaintiff, creating a foreseeable risk of harm.

190. Amazon negligently retained and supervised Bristow by failing to investigate, discipline, or remove him from Plaintiff's workplace, despite its actual or constructive knowledge of his

22

repeated misconduct.

191. As a direct and foreseeable result of Amazon's failure to act, Mr. Bristow was emboldened to escalate his harassment into physical assault and battery against Plaintiff.

192. As a result of Defendant' conduct, Plaintiff suffered physical violation, emotional distress, anxiety, humiliation, and fear for her personal safety.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Fed. R. Civ. P., Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff seeks all available remedies under all causes of action listed herein in this Complaint and any and all remedies that the Court deems just and proper. Including but not limited to All lost wages and benefits, front pay, pre judgment and post judgment interest, liquidated damages, punitive damages, statutory penalties, emotional distress damages; recovery of reasonable costs, attorney fees, and expenses; equitable relief, and any other relief considered just and proper.

Dated: White Plains, New York

March 7, 2025

EL-HAG & ASSOCIATES, P.C

*Jordan El-Hag*
_____
**Jordan El-Hag, Esq.**
**Attorney for Plaintiff**
777 Westchester Ave, Suite 101
White Plains, N.Y, 10604
(914) 218-6190 (p)
(914) 206-4176 (f)
Jordan@elhaglaw.com
www.elhaglaw.com

23